Good morning. May it please the Court, I'm Kefa Werthmann. I represent Appellant Richard Tatum in this case, as well as a certified class of participants and beneficiaries in the RJ Reynolds 401k Retirement Savings Plan. There are several issues in this appeal. I'd like to begin with the most important, the standard for loss causation under Arbith of Section 409. Under that section, a fiduciary must compensate a plan for losses resulting from each such breach. The district court in this case found a breach. It found that the fiduciary's conduct fell far below what ERISA requires. But then it failed to hold them to the correct standard on causation. The breach occurred following the spin-off of RJR Reynolds Tobacco from Nabisco, a spin-off that was intended to allow the Nabisco stocks to rise in value, free from the tobacco taint from ongoing litigation against RJR. When a group of RJR managers decided to force plan participants to liquidate the Nabisco stocks, they did so after no investigation or analysis, and they set an arbitrary six-month timeline for the divestment. Participants had made decisions about how to allocate their stocks among the options in the plan. These included several diversified options, the RJR company stocks, as well as the two legacy Nabisco stocks. After January 31, 2000, however, the participants who wanted to leave their stocks in the plan were no longer allowed to do so. Instead, RJR forced them to sell the stocks on an arbitrary timeline at a low point in their value, resulting in losses to the plan. Our expert testified that those losses to the participants' retirement savings accounts amounted to $50 million allocated across the class. Is it your contention that the committee in this case was required to maintain this stock in perpetuity? No, it's our contention in this case that the committee was required to do due diligence to determine whether or not it was meant to maintain this stock. It should maintain this stock, and if it determined that it was appropriate to liquidate it, to do so at a time that would be appropriate. Isn't the presumption here that because it was no longer an employee stock that there was a presumption that heavily weighted in favor of divestment? The only question really was the timing? That presumption was adopted by the RJR managers, but there's no presumption in the law that says that merely because it's former employer stock that it needed to be divested. I thought ERISA disfavors this kind of single stock investment, particularly outside of an employee stock. There's language in the cases that speaks to the risk of holding single employer stock. There is no specific disfavoring in ERISA of this investment, but even if that were so, as your Honor said, it would be critical for the fiduciaries to make a determination about when it would be appropriate to divest the stock and how in light of the significant risk to the participants of losses enforcing the sale on an arbitrary timeline. As a general matter, a fiduciary would think that having a single stock fund would be a good idea. I thought ERISA required not only that there be general diversity among funds, but diversity of holdings within a particular fund that was part of an overall portfolio with the one exception of where you hold an employer's actual shares. Two points in response to that, your Honor. One is that ERISA does not require that each individual fund be diversified. Nothing in the statute requires that. The regulations specifically speak of a diversified portfolio. We have cited to the court Young v. General Motors, the Second Circuit, unpublished case dismissing a claim where the charge was that a single fund was undiversified as being unsupported by ERISA. The second point, your Honor, is that this is stock that had already been... Supposedly it held on to the stock a little longer and the value of the shares had plummeted and the value of the assets in the pension plan for untold numbers of people had been destroyed. In other words, what I think I'm getting at is that the one red flag for any kind of investment counselor, any kind of portfolio manager, would be that the account had to maintain adequate diversity. As I understand it, financial managers are audited by the controller or other regulators and the first thing they look for is an absence of diversity and an overinvestment in a single stock because the employees are simply going to be vastly more exposed even though the Enron fiasco was company stock. It's so often the case that what leads to calamitous consequences is an absence of diversity and here the managers try to counteract that. Is there a danger of putting them in a whipsaw which says you're darned if you do and you're darned if you don't. Several points in response to that. One is that this is a stock that was already in the plan so that any risk that was in the stock was already existed for the participants who had made choices to invest in it. Wouldn't they want to diminish that risk with some relative promptness? Not necessarily, Your Honor, because there is a place as DeFelice recognized for some risk within a portfolio and there's a diversified portfolio here. There's no allegation here that the portfolio of options that was available to plan participants was undiversified. I thought the diversity had to be not only within the total portfolio but within each fund in the portfolio. I don't believe that's the case, Your Honor. Not in the regulations, not in the statute, not as held by the Second Circuit, not indeed as conceded by my colleagues from RJR below that there was no regulations that required the sale of the Nabisco stock. In addition, a number of companies continued to hold former employer stock as a frozen option in their plan, which is an important point here that this stock was a frozen option. There were no new investments allowed. This relates to participants who were choosing to hold that stock and forcing the sale at a low point in its value. Was the risk heightened here by the tobacco litigation? There was a risk from the tobacco litigation, to be sure. That was in the stock already prior to the spinoff, and our experts had testified that that was a risk that had not increased following the spinoff. RJR Company stock furthermore remained in the plan. There was no question or no discussion about whether or not that stock would have been eliminated. The district court test for examining the kinds of questions that Your Honor is asking here, the district court found a breach. The district court then asked a question which is unsupported in ERISA, which is whether or not it was possible that some fiduciary somewhere could have made the same decision that the fiduciaries who did so with absolutely no investigation or analysis made. So we're not stuck with the district court's rationale? No, you're not, Your Honor. But we are stuck with the findings of fact. It made all kinds of findings of fact with respect to the breach. It did make all kinds of findings of fact with respect to the breach. That's correct. It found that the fiduciary's conduct fell far below the conduct that ERISA expects and requires of fiduciaries. To an hour meeting, it seemed to me that those facts were pretty substantial. And then the district court adopted the standard with respect to who bore the burden that you urged. Yes, it did. It correctly found that the fiduciaries bore the burden, but then it failed to hold them to that burden when it applied a standard on causation, which was a standard essentially of plausibility or speculation, rather than the hypothetical prudent fiduciary standard that this court adopted in Plasters. And that standard is that a fiduciary who has breached its duty, as these fiduciaries had according to the findings of fact of the district court, can only be excused from liability if it would, more likely than not, a prudent fiduciary who made that investigation would have made the same decision. But we also said in Plasters that the question, really the broader question, is whether or not the investment in question was objectively prudent, which suggests a broad menu of choices akin to the could have. So what are we to do with that? Plasters used the language objective prudence, and Plasters did so in talking about the context of causation, once there had already been a finding of a breach of the duty of prudence. So objective prudence has to be interpreted in light of the fact that the question now before the court is causation. And that question is answered as Plasters adopted according to a hypothetical prudent fiduciary test. There is, and the hypothetical prudent fiduciary test as used in every circuit uses the words would have. There is no circuit level authority for the proposition that a fiduciary who has breached its duty can be excused from liability for compensating the plan. This is the only monetary relief in this case. And there are holdings where fiduciaries, I mean, it seems to me that we may be on the brink of a, you may be asserting a half-breaking principle. Can we hold someone monetarily liable, a fiduciary's plan manager is monetarily liable for losses that result from an investment decision that we might conclude was objectively prudent? Wouldn't that be a pretty aggressive holding to hold plan managers or fiduciaries generally monetarily liable for objectively prudent actions? And that would open all kinds of doors? Two points. The opposite is true as a first point, that it would be a fairly aggressive and radical departure from the case law to find that a fiduciary that had breached its duty could be excused from liability under section 409 based on the fact that it was possible that a hypothetical prudent fiduciary who had considered everything that should have been considered would have found the same way. And a second point is that objective prudence, while the court, the district court used the words prudence and referred to plasterers, the court did not apply the correct standard. The court found that on the one hand it was possible that fiduciaries could have kept the stock in the plan. On the other hand, it found that it was possible that a fiduciary based on some broad general concerns, without taking into account all the facts and circumstances that are relevant, could possibly have decided to eliminate the stock from the plan. My point is that they are, I think they're likely to be whipsawed here because if they held on to the stock and it had plummeted and a lawsuit could have been brought, you held on to this too long, notwithstanding the caution flags that should have come up. You should have known that after the RJR Nabisco split that there were going to be a lot of employees who were going to be holding predominantly or not exclusively Nabisco funds. You should have known that Nabisco funds were of especially high risk because of the tobacco taint, that single stock funds were risky as a general matter because a lot of employees invest in a single fund, they're just going to. And you should have gotten, assuming the value of the stock had plummeted instead of risen, the argument would be made, there were these red flags, there were these caution signals, you didn't pay any attention to them, you just held on to this and the stock just went south. And so my concern is, particularly with respect to this fact of diversification, because I'm not sure it's necessarily a global question here about would have, could have, it strikes me that our precedent, particularly Plaster's but also the Scalia concurrence in Fink that many other circuits have adopted, that the standard here is akin to one of objective prudence. And I'm just concerned about using, in this particular question of diversification, the incentives should be for fiduciaries to diversify, not to hold on to funds where it has single stocks. If we rule in your favor, would we be setting in motion a set of incentives that would have fund managers delay impermissibly long in implementing a basic investment principle, which is to diversify and protect the employees of this company against the extraordinary risk that comes with holding a single stock fund. I would think we'd want to encourage rather than discourage plan managers to diversify. Now you can say well it's all a question of timing and this and that and all the rest, but still how do we get around the fact, if we rule for you, that we are really knocking a hole in this basic investment principle of diversification. And to me the whole case revolves around diversification and the need to diversify, much more than a global question where there are investment decisions made that are non-diversifying. I can see a case, for example, where an investment decision was made that led to maybe less and less diversity and may have been objectively prudent, but there may still be problems with it. But when something leads in the direction of greater diversity, isn't that a different kettle of fish? The incentive that needs to be directed to plan fiduciaries is that they investigate thoroughly and carefully whenever they make a plan investment decision. Dr. Biller, our expert, who the court adopted as part of its standard of prudence, testified that the most important risk to be considered here was the risk to the participants of forcing a sale of a stock that was already in the plan on an arbitrary timeline in the face of certain losses when they're sold at a low point in its value. This is a case where the stock is already in the plan as employer stock and as a result of a corporate restructuring, the issue is whether and how to move investment options. That needs to be done through due diligence. So here's a situation where the district court found that the fiduciaries fell far below the standard of care that's required in making any plan investment decision. Could I just pick up on what Judge Wilkinson said? Because I share those problems and it seems to me that you had a road to go in finding that there was a breach of duty here. But you put on a really persuasive case, the district court found, and I think the findings are substantiated by the record. A risk gives the fiduciary all kinds of opportunities to act prudently and escape liability no matter what happens to the stock. If you carefully consider it, if you have meetings, if you do this, that, you are not liable. That's why there's so few of these cases. But this is an extraordinary case where the record is virtually devoid of the kind of thought that we think fiduciaries, and just think of a fiduciary in your own life who would go out and sell a principal asset with a short meeting and not really very well attenuated goals and not any discussion with an expert of the misunderstanding of the law, all of which the district court found, all of which seems to me to be substantiated in the record. But then the problem remains. We come with all this case law that talks about diversification. But it seemed to me, I don't know if this is true or not, that that went to whether there was a breach of the duty to begin with, that discussion of diversification. They aren't active, final, yes, there's been a breach of the duty. And it's their burden to show that it's more likely than not that a reasonable, prudent in person would do the same thing. Now, do the diversification cases come in at that, do they talk about diversification in that last step? Did you understand my question? Yes, I do understand your question. And the diversification cases have come up predominantly in the context of either employer stock or portfolios of the plan. And the one case that comes the closest to talking about that in that context is Plasterers, where the court remanded to say this is a decision that needs to be evaluated in all the facts and circumstances. In other words, there's no per se rule in favor of diversifying the plan assets. And in this case, the plan assets were diversified. I find this a very difficult case, but if we should say diversification counts as a heavy weight and it counts as a heavy weight here at the end, it doesn't, it seems to me that even if the fiduciary breaches its duty right and left, all kinds, let's take it away from this case, even a worse case of breach of duty, that if there is a claim by the fiduciary at the end that this was needed for diversification, there's no violation of ERISA. And that seems to defeat all the things that are in ERISA about making prudent fiduciary. And I see that my time is up. Can I continue answering your question? Yes. It would defeat everything that is in ERISA, in particular in this case, in the sense that it would say it's meaningless to have gone through the fact that the fiduciaries did not take any of the steps they were required to take in making this very important plan investment decision that would affect and lock in losses for plan participants. But the fact that diversification is important still allows the district court in this last step to find against you. If it should find that a reasonable fiduciary did everything appropriate and still made the decision because of diversification. As long as the district court is considering all the relevant facts and circumstances of the plan, of the participants, of the warnings that were made to the participants, Well, maybe he was in effect. I mean, you know, maybe he was. He was saying, look, there was a breach that I wish they'd gone about it in a different way. But at the end of the road, the decision was objectively sound or objectively prudent. What I wanted, because to me, I don't feel the need to make global statements here. Again, it turns on this particular desire to diversify funds, which I'm concerned about putting roadblocks in the way of diversification. I just think that's a real problem. But I meant to ask you about Justice Scalia's concurrence in the Fink case. And that's widely cited. And he said when he was on the D.C. Circuit that you have to put the vivid language to one side. But he said, you know, you can't be held liable for losses resulting from an objectively prudent investment decision, even if you arrive at it by astrology. And that is, the Fink concurrence has been broadly adopted. What is your reaction to that? Would we be creating riptides in circuit law if we departed from the Fink concurrence and held in essence that someone can be held liable monetarily for losses resulting from objectively prudent action? The Fink concurrence says that the fiduciary decision should be evaluated according to everything the fiduciary should have known and is consistent with the hypothetical prudent fiduciary test that this court adopted in Plasterers. Where this court would be departing from that concurrence would be to hold that all that was required for causation was for plaintiffs to show some sort of connection between the breach and the loss, which certainly before Plasterers would have been what we could and would have argued. So Fink says, and Fink furthermore when it talks about an objectively prudent investment, talks about a blue-chip stock that no one could argue with. So here the question is, a stock that was already in the plan as an undiversified option, would a hypothetical prudent fiduciary take into account all the factors that were concerned? The fund itself was not diversified. That's the point. Don't the individual funds need to be diversified as long as a fund is an option? No, they don't. No. I mean an example would be real estate funds or small cap funds or large cap funds or as often happens in restructuring situations like this one, former employer stock that then becomes held as a frozen option in the plan. The employee can go from fund to fund. The employee can go from fund to fund. The participants have made choices about how to allocate their portfolios based on the range of options that are in the plan. In terms of what the district court did, didn't it in effect adopt the totality of a circumstances test by saying, look, there were procedural things that I wish had gone differently, but in the final analysis I find they're outweighed by the objective prudence of the decision to enhance diversity? The district court did not actually make that conclusive finding. Instead it said that it was sufficient to find that some fiduciary somewhere could have made the same decision and that while there were factors that pointed to holding the stock in the plan, that there were factors that pointed against it, and therefore it would find no causation. That's not consistent. The district court actually suggests that if it had applied the test that you would insist upon here that it would reach a different result. I sense from the tenor of the court's order that the result might not be different. The court, for example, in adopting the Dr. Biller's test for the duty of prudence, said that the most important consideration was minimizing the risk of large losses to the participants in forcing the sale on an arbitrary timeline. The district court's use of the wrong test for causation meant that it didn't need to consider Dr. Biller's opinion on causation, and it would on remand. But I think that I read your papers as acknowledging that the district court could come out the same way, but what you're asking us to do is to direct the district court to use the correct test. Correct, Your Honor. That is what we're asking. So thank you. I hope I still have some time for rebuttal. Mr. Charnas? Oh, I'm sorry. I see the secretary is Mr. Hartman. We'd be pleased to hear from you. Thank you very much, Judge Wilkinson. May it please the court. I want to begin by responding to Judge Wilkinson's concern that fiduciaries here are going to be whipsawed between reverse stock drop liability and stock drop liability. This is not a case involving a prudent fiduciary who kicked all of his I's and crossed all of his T's and simply ended up with a poor decision. This is a case where the fiduciary was held by the district court following a five-week bench trial at which the district judge had the opportunity to hear from experts for both sides, was found to have breached its fiduciary duties and thus to have breached ERISA. And ERISA implements the law of trust which holds that as between an innocent beneficiary and a defaulting fiduciary, the fiduciary must bear the risk of uncertainty as a consequence of his breach of fiduciary duty. I'd also like to respond to defendant's argument that the Woodhave test is contrary to ERISA and unworkable in practice. In fact, it's the opposite. The Woodhave is the only test that is consistent with ERISA. It's the basic test in this circuit and in the United States for causation. And we're talking here not about liability, which is an issue that the district court decided, and the question is what the effects of that breach were on the decision to purchase Nabisco's, or to sell Nabisco's stock. It seemed to me your brief, which I read with interest though, indicated that the district court could and probably would arrive at the same conclusion even if we were to remand the case. And I think you pointed out that liquidation itself was reasonable given the highly risky nature of single stock funds, and I think Nabisco's stock had dropped in price between the split and the liquidation. So they were looking at a falling stock. I mean, they were looking also at the tobacco taint and the additional albatross that that would impose upon the stock. And as I understand it, while we're dealing with the district court's findings, I think the district court found that the Econ takeover offer for Nabisco, which set the stock prices higher, was not known to the fiduciaries and could not have been known. Well, Judge Wilkinson, I think I agree with you generally about our position. We don't take a final conclusion as to what the outcome would be on remand. We think it's extremely important, however, that this court articulate here today the proper standard for causation, which is would have and not could have. As to the breach in the Econ takeover, the breach that the district court found was a breach of the duty to investigate, not a breach of failing to take into account the possibility or the plausibility of an Econ takeover. The proper test the district court should have asked following the Eighth Circuit's decision in Roth and this court's decision in Plasterer's is, would the hypothetical prudent fiduciary more likely than not have made the same decision as this fiduciary who breached its fiduciary duties and breached ERISA? The district court did not ask that decision. Instead, it asked for speculation as to what could have happened. Although, as Judge Matsa has pointed out, there is a potential range of options that may be available to a prudent fiduciary, which the court may need to go through in order to establish liability. Once liability is established, we shift from the could have standard to the would have standard. You know, in looking at these other circuit cases, the danger here is this could have, would have can get you into a bit of a Byzantine debate and a bit of an academic debate. I don't see the other circuits getting wrapped around the axiom on would have, could have a lot. And what they do see, I mean, it's important to keep the law, because you're talking about people trying to follow the law and understand what standards are going to guide their conduct. If we, if we depart from the more straightforward standard of objective prudence or imprudence as Plasterer's indicates, and of course, Plasterer's found no lost causation, I think, but... Didn't Plasterer's remand? It did remand. Determination. Yes, exactly. But if you depart from the standard of prudence, which covers a lot of ground, we're in danger of, I think, taking a fairly straightforward standard and trying to muddy it up. I don't see in this would have, could have stuff blown large in other circuit decisions. Your Honor, you've asked a few questions, so if I may respond to each of them. In terms of the distinction between would have and could have, we don't think it has been addressed in the ERISA context by other courts. We think that the district court below made an error of first impression, and this court has the opportunity to correct it. We don't think that by endorsing the would have standard, that this court would be departing from any settled law. In fact, it would be following this court's decision in Plasterer's, which used the would have language, the Eighth Circuit's decision in Roth, the Fifth Circuit's decisions, and the decisions of the Third Circuit as well. In fact, no court of appeals has, to the best of the Secretary's knowledge, endorsed a could have standard. How should we, if at all, then address the Fink case? I guess Fink was not an ERISA case. That's the first point maybe it was, but how do we deal with that? Well, Judge, that was actually, I think that was Judge Wilkinson's question as well. I think that objective prudence here is shorthand for causation. The question is, once you've established liability, was that liability traceable to the losses? And in order to show objective prudence, that's where this language comes in from Plasterer's and from Roth. Why do you think the investment decision was imprudent? The Secretary's not taking an opinion on whether it was imprudent. See, I mean, you've got to give us some reason to believe. When I read your brief, it was a very interesting brief, but I said they're giving us all kinds of reasons to believe in your brief, your very own brief, that this was a prudent decision. And you indicated the highly risky nature, as I say, of single stock funds. Nabisco's stock declined in price after the split, between the split and the liquidation. It's uncertain future given the tobacco taint. The fact that the prospective takeover bid was not known to the trustees. And so I understand your view on the standard, but what you were, it seemed to me, your brief, in important respects, underscored that this was an objectively prudent action. Your Honor, again, we think that objective prudence is shorthand for causation. We think the breach here was the breach of the duty to investigate. What difference would that have made, or what difference should it have made? Well, that's the question that the district court should have asked. The district court should have asked defendants, following plaintiff having shown the breach and having made a prima facie case on causation and losses, whether the hypothetical reasonable prudent fiduciary would have made the same decision anyways, and as to your question, Judge Wilkinson, about how these cases are going to be decided, frankly, they are decided with the assistance of experts. District courts are well-equipped to listen to experts here. You just opened up a road to litigation where someone, I mean, you've got to ask whether people are even going to want to serve as fiduciaries after a certain point. We announced a decision that said, all right, these were in all probability objectively prudent actions, but nonetheless, the objectively prudent actions may have required a more extensive investigation. It seems to me that the farther you go behind an objectively prudent decision, and particularly one in the direction of greater diversification, you're asking, I think you're opening a bit of a dangerous door. Respectfully, Judge Wilkinson, I disagree. I don't think that the decision here affects the conduct of fiduciaries at all. The question of liability is separate from the question of causation. The question of causation is what then-Judge Scalia got at his concurrence in Fink. And he effectively articulates the no harm, no foul principle, which has been expanded by the Eighth Circuit in Roth and then adopted by this court. You don't agree with that, right? No, we certainly do agree with that. And that goes to causation. And the question is, if, despite the breach, the hypothetical prudent fiduciary would, more likely than not, have reached the same result, then the fiduciary is shielded from liability. Where is that language? That comes in Roth, and I think in this court, it's not in Fink, actually. But I'm trying to understand where you think Fink comes in. Does it come in when you determine, when you look in the beginning to see there's a breach? No. Fink comes in at causation, Your Honor. And what is causation, where we are right now? Yes, Your Honor. That's the could have versus would have question that we're addressing. Okay, but then Justice Scalia didn't use could have, would have, did he? No, he did not. But do you think, tell me what your argument is, because I'm not understanding it. Well, as it's been interpreted in the ERISA context, as Judge Wilkinson or Judge Diaz pointed out, Fink was not actually an ERISA case. But it's been interpreted in the ERISA context by the Eighth Circuit in Roth and by this court indirectly in Plasterers. To say that if a- Exactly, Your Honor. It's this hypothetical prudent fiduciary standard. And the decision regarding this decision not only entails diversification writ large, but all the components, including the timing of the diversification, right? Yes, Judge Diaz. However, again, I think those questions go primarily to liability. And then the question on the simple question, very simple question on causation, would a hypothetical prudent fiduciary, more likely than not, have reached the same outcome? It will likely require expert testimony, but expert testimony was required here as well. There were experts for both sides. It would likely have arrived at the same outcome, but the outcome here is not just diversification, but the timing. Yes, Your Honor, and that's a question for the experts. That's a question that the Secretary of Labor is not taking a position on. It's a fact-intensive question that the court will have to consider. Let me ask you this question. Certainly. I agree with the district court's opinion. I think it is possible to read the last section of the opinion as applying the would-have standard. It verges back and forth between would-have and could-have, and I take your point. But if the court had applied that standard, you wouldn't have any issue with it? If the court applied the would-have standard to the evidence following its consideration of expert testimony, fact-witness testimony, following five weeks of trial, and it reached the same outcome, the Secretary of Labor would be comfortable with that result. The Secretary thinks that you can't read the opinion that way because, ultimately, the district court is saying there's basically a range of activities. Is there a reasonable producer that could do this and that and the other things, and they're for that reason? Yes, Your Honor. So that does seem not like would-have. Exactly, Your Honor. It's porting a concept that's appropriate to liability to the causation stage. Do you do these at-risk cases a lot? I do, Your Honor. All right. Maybe you can tell me what I was worried about. Judge Wilkinson talked about the bad consequences of one holding, and I was worried about the consequences of another holding. It seemed to me that ERISA is all about really protecting the plan fiduciary. The plan fiduciary does this, and if they have a plan and they adopt a plan and they follow the plan, which we didn't do here, if they did all that, then they're not going to be liable no matter what happens to the stock. Because we all know from our own, or at least I know from my own bitter experience, stocks can go up and down, and I can't tell. I'm sorry to hear that your stocks have gone down, Your Honor. But, yes, there would be a severe consequence to the Secretary's concern from endorsing this could-have test in that it would lower the standard for fiduciary liability and expose innocent participants and beneficiaries to imprudent conduct of fiduciaries. So you're right that- Given that it was imprudent conduct. Exactly. Given that it was imprudent conduct. ERISA reflects a balance that was struck after months of congressional debate, drawing on the law of trust which developed over hundreds of years in the English courts and the American courts, and there's a very complex jurisprudence under it. And the decision of the district court below upsets that balance and undermines, we're concerned, the protections for- I thought the whole purpose of diversification was to protect employees. Yes, Your Honor, and we're not- And you seem to indicate that it's something else. No, Your Honor, we're not taking an opinion on whether diversification was met here, but we agree with Ms. Werthmann that under- We have a district court's finding that- Yes, Your Honor, but diversification under the modern portfolio theory, which the secretary and the courts have adopted, is to be looked at on a portfolio-wide issue. As I think Your Honor, Judge Motz wrote in DeFelice, there are special risks that come with single stock plans, but that doesn't- that's not a dispositive matter. It doesn't mean that they were never appropriate. Here, in fact, the plan document required them to be held beyond the time at which the beneficiaries here sold the stocks. Thank you, Your Honor. Mr. Charnas, we're pleased to hear from you, sir. Thank you, Your Honor. May it please the court. We would submit that Plasterer's resolves this case, and Plasterer's does not adopt the Woodhouse standard, and I will take the position that no other circuit has done so either. Plasterer's is based on FINK, which, by the way, is an ERISA case. You had note that West writes, but it begins, employer sponsored or ERISA retirement plan beneficiaries brought suit, and so forth. So FINK was an ERISA case. And I apologize for belaboring FINK- excuse me, belaboring Plasterer's, but I think it's important to look at Plasterer's and what it actually says. It's got one sentence in the middle of six paragraphs of analysis on causation that quotes the Roth case that has the Woodhouse standard. That is not the standard this court has adopted as the be-all and end-all for causation. But how does this court start? The court starts on page 217 of the Federal Reporter by saying, the finding that the former trustees breached their fiduciary duties to investigate and diversify did not establish as a matter of law that the actual investments were imprudent, and liability can only attach if, in fact, that was the case. This court said expressly liability can only attach to a decision made after bad process if the investment decision that was made was imprudent or continued accordingly in order to hold the former trustees liable for damages based on their given breach of fiduciary duty, that's the process breach. The district court must first determine that the former trustees' investments were imprudent. Again, the question is imprudence. And the court then says, again, the third paragraph on page 218, the third paragraph of the causation analysis, the mere fact that the former trustees failed to investigate alternative investment options does not mean that their actual investments were necessarily imprudent ones. The next sentence quotes Roth, even if the trustee failed to conduct an investigation before making a decision, he is insulated from liability, if a hypothetical prudent fiduciary would have made the same decision anyway. But the next sentence clarifies what this court meant. The very next sentence is a quote from Fink. It is the imprudent investment rather than the failure to investigate and evaluate that is the basis of the suit. And two paragraphs later, this court remands to the district court. And it doesn't remand and tell the district court to determine what a hypothetical prudent fiduciary would do. It remands, quote, for the court to determine the prudence of the former trustees' actual investments. Here at trial, in its opinion, its findings of fact and conclusions of law, the district court found that removing the Nabisco funds was objectively prudent. Plaintiffs have not challenged that factual finding on appeal. And that resolves this appeal, in our view. Plasser has established a standard of objective prudence for causation. Here, the district court found objective prudence as a factual matter after a five-week bench trial. The plaintiffs haven't challenged it. Objective prudence means using the highest... Any reasonable fiduciary. In other words, the district court recognized that there's a range of permissible options. A fiduciary may, for example, want to put a growth fund in the plan. There are hundreds of growth funds. Virtually all of them probably are prudent. Even as we know, for purposes of this argument, I know you're not going to be repeating that forever and more, but for purposes of this argument, the state has found the fact that the fiduciary here violated the claim and was not prudent in any number of respects. And therefore, you get by that first label. And it's your burden to show something. And you think that your only burden is to show that some other fiduciary who had done everything that is required by ERISA would have come out the same way. Well, I would phrase it differently using the language of Plasterers, which is assuming there's a procedural breach of prudence is a decision that the fiduciary has made nonetheless objectively prudent. What I'm trying to do is flesh out what objective prudence means. And if objective prudence means that you have to show that a reasonable fiduciary would have done this, then you lose, or at least you get a rebate. You think that you meet the Woodhouse standard? Well, Your Honor... I'm happy to hear that argument. Well, I do think, and I briefly do argue that they meet the Woodhouse standard, largely for the reason that... the reasonable fiduciary, in your circumstances, the reasonable fiduciary would have made the same choices. I think that... I don't believe... I'll answer your question. I don't believe that's the standard. But if that is the standard, the answer is yes. And the reason is your... The district court didn't find it. The district court didn't go that far, but the reason is your opinion in DeFelice. But we would have to make some findings the district court didn't make. Well, I think you have to make legal findings, but I think you can make that decision based on the district court's factual findings and your opinion in DeFelice, Judge Motz. Because in DeFelice, you said, placing retirement funds in any single stock fund carries significant risk, and so would seem generally imprudent for ERISA purposes. Well, what portion of the whole analysis was DeFelice directed to? It was directed toward the U.S. Airways fund. To the breach of the fiduciary duty. To the procedural breach, that's right. And we know, as far as the district court is concerned, on 50 pages of findings, that you all breached the fiduciary duty. So you're in a different position than you were in DeFelice. Well, but then the question, addressing the question of causation, the question is whether removing of the funds was nonetheless prudent. As Scalia says, if you use astrology but happen to choose the prudent option, there's no monetary damage. And that's an important point. I think Judge Wilkinson asked counsel about that, and my colleagues on the other side, which is ERISA has a very sophisticated, I think, remedy scheme. If there's a procedural breach which led to an imprudent investment, the participants can get monetary relief. If there's a procedural breach, astrology is used, or darts are used, that happens to choose a good investment, a prudent investment, as the district court found here, you cannot get monetary relief. But that's not all. That doesn't mean that the plaintiffs are left remedialists. They can get equitable relief. For example, if they haven't suffered any losses as a result of the procedural breach, they can ask the district court for an order to remove the fiduciaries from the plan, so they can't use astrology again. Now, plaintiffs here at trial didn't ask for any equitable relief. All they asked was for money. And I think the reason, a second reason. Suppose there's no investigation at all. I mean, suppose they, just by blind luck, here there was a meeting and here there are these different factors, that the trustees actually did get together and discuss the matter. But suppose there had been no meeting, and they had just snapped their fingers and said, we don't need to meet on this, this is absolutely obvious, sell the deck on stock. Would, in your view, they would still be insulated from monetary liability? That's what Fink says, that's what Scalia says in Fink. He actually uses the phrase blind luck. And the reason is that what Arisa wanted And what has Fink's journey been through the circuit court? You're talking about a concurring opinion during a justice's circuit court. You know, it's a lowly concurring opinion of a circuit judge, Your Honor, but it's been very well treated by the circuits, including by Plasterers, which quoted it and relied on it. And I think the reason Plasterers also quoted the Roth-Woodhave. What are we to make of the Woodhave standards in this context? I think the Woodhave standard is an example of where there's objective prudence, and therefore there's no causation of monetary liability. The example that you posited where a trustee is looking at a menu of various investment options and happens to pick A over C or D or E is different in kind and degree than this case, where the question is the best or not, and if the best, when to do so. I mean, that's not the same case as a trustee considering a menu of options. Why shouldn't we treat that case differently? Well, I think you're right, it's not the same case, but I think the Woodhave standard is virtually impossible to apply in a situation when there are multiple options, because you're never going to have a more likely than not. I mean, here... Granted, let's say that's true, but what about the case? Well, in this case, we think that, again, the question is, we think under Plasterers, from the start to finish of six paragraphs, the question is there's no causation if the investment was nonetheless objectively prudent. The district court found that removing the funds was objectively prudent. Under the standard, the district court applied based on the experts and other testimony, and the plaintiffs haven't challenged that finding. Did he also find that removing the funds at the time that it occurred was also prudent? He did. He found removing them as of January 31, 2000, was objectively prudent. He didn't exclude the possibility that other courses of action would also be prudent. He didn't make findings to that effect, but he said it might well be that leaving them in was prudent, perhaps February 28th would have been prudent, but he found that what they did on that day was objectively prudent, and therefore, under Plasterers... It sounds like they could have done it on any day, and it would have been objectively prudent. Well... Or is it? Because there doesn't seem to be any way to measure that if we don't get to the substance of any expert testimony at the time. It may well be because of the nature of this stock fund. You know, these original funds that were not employer single stock funds that were in the plan as a result of the spinoff, the NGH fund, the fiscal group holdings fund, which is one of the two, had fallen 60% in value from mid-June of 1999 when the spinoff happened until the end of January of 2000. And what the fiduciaries here were doing was acting based on their statutory command. Orissa in 1109 specifically says, the fiduciaries have a duty to diversify the investments of the plan so as to minimize the risk of large losses unless under the circumstances it is clearly prudent, not just prudent, but clearly prudent not to do so. And here... The district court found that notwithstanding that, you breached your duty. You didn't follow the plan. You know, so you come to the final step. I just don't know what's left with Orissa. If on this record you could go to the standard of would any fiduciary do this? Well, I just... As opposed to what a reasonable fiduciary who had followed all the steps would have done. I don't think the standard is would any fiduciary do it. It's would a careful fiduciary, analyzing the things that a careful fiduciary... Of course, the district court didn't say that either. Well, no... The district court said, well, maybe he could do this and maybe he could do that. Well, the district court looked specifically at removing the two funds as of January 31, 2000 and found based on the evidence before him that that step was objectively prudent. Okay, but I guess sort of building on what Judge Diaz asked you, I don't see any situation... Can you change the facts slightly in this case where the district court's analysis would lead it to a contrary conclusion? It seems to me like any decision you made would have... Some fiduciary somewhere would have taken... Well, I think the Nabisco funds were incredibly highly risky funds. So I think Judge Diaz may well be right that no matter when the fiduciaries took them out, it would have been a prudent decision. But that's not to say that... But that's not what the plan says, right? Well, yeah. The plan, the June... You're usually supposed to follow the plan. We are supposed to follow the plan. The June plan required the two Nabisco funds to be held as frozen funds. Right. There was an amendment in November, as Your Honor will... Which the district court held was not valid. The district court held was not valid. Before the district court held... Before the district... But, Your Honor, before the district court granted their post-trial motion to amend, the parties had to do a stipulation. Because the plaintiffs... Every one of their complaints before trial alleged the validity of the November amendment. Their appeal to this court, as you will remember, was based on the wording of the November amendment. And when they came in after trial and said the November amendment is invalid, we said, wait a second here. That puts extreme prejudice on the defendants. Because if the November amendment were not valid, our experts would have had different testimony. We might have had different facts. The problem here is I don't know, you know, in reading the briefs and the amicus briefs, I don't know of anybody who really thinks this case is going to come out any differently on remand. But the question is rather than, you know, just broadly embracing the think concurrence or making some global pronouncement about an objectively prudent decision is always valid, no matter what procedural infirmities preceded it and the rest. It is the particulars of this case that seem to me to set a particularly bad precedent. Because even if you don't agree with the fact that an objectively prudent decision in all cases invariably insulates plan managers from monetary liability, to go behind this particular decision where you have a highly risky fund, you have a highly concentrated fund, you have a decline in price and everything, if you go behind this, you're going to go behind an awful lot of perfectly sensible investment decisions and open trustees to, I think, broad prospects of monetary liability. Now, people who want this sort of, who advocate this sort of rule indicate, oh, this is not going to be a problem. All they have to do is, you know, check the list and put the, you know, go through the checklist and do the procedural this and procedural that. But it always is a problem. And it's going to be litigated extensively if a decision that is in accord with probably the basic investment criteria, the basic investment lodestar, which is to protect employees under ERISA from the prospect of dramatic and catastrophic loss. And they wanted to protect them relatively sooner rather than later. This is the exact opposite of Enron and the disaster that befell the employees in Houston. Your Honor, you're exactly right. The fiduciaries here, even if their procedures were not up to snuff, acted to protect participants. And one important point is plaintiffs labored mightily at trial to show otherwise. There's no evidence that any fiduciary of any ERISA plan in the almost 40 years since ERISA was adopted as a matter of fiduciary discretion has included a non-employer single stock fund in a 401k plan. Not a single one. Not a single one. There are a handful of plans in this record. I think there were seven which had non-employer funds after a corporate transaction. Those were put in by the settler. The court's frowned on these single fund plans even if they're one of a number of options because the argument was made in response to you that, well, it doesn't matter because they're just a menu of options in the Nabisco plan. The Nabisco fund is only one. Would you address the fact that even though this is a single stock fund, there are many, many investment options within the plan as a whole? Well, I think DeFelice answers the question. DeFelice says a fiduciary must determine. You're talking about liability. Liability is always far even held to the contrary. Well, that's right. But the point is that diversification, if, as DeFelice says, a single stock fund is per se imprudent, even if you adopt the plaintiff standard, no hypothetical prudent fiduciary would ever do that. So you never will have liability? Well, I wouldn't go that far. Then what are we about? We should have been summary judgment in the very beginning. This all involves this single stock fund. We couldn't possibly violate fiduciary duty or cause you any harm. Well, let me give you a hypothetical we put in our brief, which is you buy a company. You're the ERISA manager. You look at their 401K plan, and they've got a fund that invests in lottery tickets. You can use no procedures and take that out, I would submit. That is per se imprudent. You can look at that, take it out. If it just so happens that the next week one of those tickets would have hit, you know, the Powerball, that's an imprudent investment. And I think, you know, this is not suggesting we are going that far, but I think as Judge Wilkinson has pointed out, the statutory command is to protect participants by diversifying. And DeFelice says that is done. And not only DeFelice, the Seventh Circuit in white says that is done fund by fund within the plan. I thought you were responding to my question when you said, let me give you a hypothetical. I wasn't sure I understood how it responded. If we should say that every time you get rid of a single stock fund, there is no violation of ERISA, which is, I take it, your position. Well, where is it? I don't need to take that position. Give me a hypothetical where there would be, even though you are getting rid of a single stock fund. Let's say that there is a corporate transaction that is set to close a week later and there is no doubt or virtually no doubt, I guess there is never no doubt, that everything is going to proceed as planned and that will result in a 20 percent appreciation of the stock at closing for a week. Maybe in that circumstance, a fiduciary could say, you know what, it is a reasonable risk to take for a week. Here, in the NGH stock... But I gathered from you what you just said, maybe a reasonable fiduciary could find to the contrary and therefore there would be no liability. Well, it depends on the facts. For example, maybe there is a substantial... But you said you were the one that put maybe in, so that was in your facts. I understand. There are no certainties in investing as you have alluded to before. So since there are no certainties, there is never any liability is what you are saying. Well, tell me, give me an example where there would be liability. The problem is that ERISA doesn't like single stock funds. And ERISA doesn't like people that do not follow its procedures, which give all kinds of coverage to the fiduciary. That's right. I completely agree with you, but Plasterist... Which you didn't. But Plasterist, what Plasterist said though was that... In Plasterist, there was fiduciary coverage. No, Plasterist found a fiduciary procedural breach and went on to say that's not enough to establish liability. You still have to... Remember, the investment in Plasterist was a terrible decision. I mean, over the course of decades, the trustees there invested their retirement savings of the union members in CDs and T-bills, which had very low interest rates. It seems pretty obvious, I think, to me reading that case, that this court and the district court thought that a diversified portfolio of stocks and bonds would be a better investment. But the court didn't allow... Didn't follow the district court's holding that there was liability for monetary damages, for losses. What it said was the district court needed to look to see whether the investments in the T-bills and the CDs was nonetheless objectively prudent. Even though it was pretty clear that a diversified portfolio, like some investment managers were proposing, would not only also be objectively prudent, but probably would have been better. So I think this court in Plasterist acknowledged the fact that there could be several good, prudent investment options. And again, this does not leave a remedy hole in ERISA. A remedy where there's no loss is an action to remove the fiduciaries or take other equitable relief with respect to the fiduciaries to make sure that they don't follow the imprudent procedures again. Plaintiffs elected, for whatever reason, not seek that at trial here. There's been no case... There are cases, like the Roth case, that use the language of what would a prudent fiduciary have done. There is no case that I'm aware of, or that any of the plaintiffs or the labor department have cited, no case that assesses monetary liability for a prudent decision, an objectively prudent decision. Including this. There's no case... Including this. That's right. What I was interested in, and maybe my research has been sufficient, but I was interested in another case in which there was a five-week trial and extensive findings with respect to the breach of the duty and the conclusion that you bore the burden of establishing the breach didn't make any difference. Is there such a case as that? I'm not sure I understand your question. Well, in other words, the case that comes exactly is this case here. Of course, the burden only... Bear with me a second. There is this long trial with many witnesses and much fact-finding in which there's finding a breach of the fiduciary duty. There's no doubt about that. And I know you dispute that on the appeal, but you have fact-finding with respect to that. And then the district court concludes that it's your burden to establish that that breach didn't make any difference. Okay? Is there any case that does those two things? On causation after a trial, I don't think... I think the answer is no. So I'm not sure that the fact that there is no finding of monetary damages is very decisive since there's no case in which there's been a finding of liability and a finding that you bear the breach of just determining that you are still not... that the decision would have been the same. I'd like to make two points about the burden of proof on causation. That's fine if you want to argue burden of proof. But I just wanted to establish... No, I know you have an argument about burden of proof. But my first point relates to what you just said, which is burden of proof only matters when the evidence is inequitable. Right? If one party has slightly better evidence than the other party, it doesn't matter who bears the burden of proof. So I guess I would put somewhat less weight on who bears the burden of proof than you do in your question. With respect to... All right, I'll amend my question. There isn't the burden of proof. Somehow they said that the stockholders had the... the beneficiaries had the burden of proof. But there was this five or six-week trial where there were all these findings that there was a breach of fiduciary duty by the trustee. Is there such a case? Again, trials are very rare. Defelice is a case of a trial. They are. And the district court here never ruled on the party summary judgment motion, so we didn't have an opportunity to... It certainly ruled on whether, in fact, there had been a breach. My second point on causation... But your answer is not...  Off the top of my head, I don't recall one, Your Honor. Well, you've been with this case for a long time. You know the law better than anybody else in the courtroom. I don't agree with that, Your Honor. But on the burden of proof, seven circuits, 2nd, 3rd, 6th, 7th, 9th, 10th, and 11th, put the burden of proof on causation on the plaintiff. You wouldn't know that from reading the briefs on the other side, but only two circuits have put the burden of proof on the defendant. But the causation is an element of the plaintiff's cause of action. It's an element of the cause of action. The general rule is that this court and the Supreme Court have said that the plaintiff bears the court. Now, in limited circumstances, for example, when there's self-healing, in trust law and in ERISA law, it makes sense to move the burden of proof to the defendant because the defendant's the one that had the evidence about, for example, committing funds and so forth. Or if there's a fiduciary relationship. But that's... If you bring a case against your trustees, it's in regular trust law. No. In the seven circuits that I've held, there's no shifting of the burden of proof on causation. Is that in ERISA? In ERISA. I'm talking about regular old trust law. I think my reading of the cases and the briefs sort of skim the surface of trust law on this point is that the cases are a little bit all over the place in trust law about the burden of proof. Has anybody indicated at any point in this argument how this could possibly come out differently on remand? No, Your Honor. We think it will come out exactly the same. We think that we've preserved the argument that even if you apply... I agree with you, Your Honor. We think that Plasterers has a pretty clear standard and this court is bound by it and should apply it. But if the court thinks it's more complicated than I think, I think you could apply there, would have standard, and say based on the arguments that we made and preserved below and we've made to this court, because it's a single stock fund, it's non-diversified, it's highly risky, it's imprudent per se, as DeFelice said, that a hypothetical prudent fiduciary would have eliminated it without making any real legal ruling. Do we need to go as far as the faint concurrence or as far as your interpretation of Plasterers to uphold what the district court did here? From some of the discussion, you would think the district court ruled against you, but ultimately it came down in your favor. And isn't it possible to take a narrow view of what the district court decided to take, a view that under the totality of the circumstances, the district court has this one reference or has this reference to could have. Judge Motz pointed out at the end of the opinion that may be in reference to would have. But is it possible to say that, look, the district court has already told us what it's going to do, which is that given the facts of this case, no liability attached. I mean, don't we look, the rule that district courts could be affirmed on a basis somewhat different, that whole idea of affirming a district court on alternate ground is to avoid remands and especially in a case like this where the district court had said, looking at everything, monetary liability, monetary liability is not justified. Under these circumstances, and there are four or five of them, I mean, is this a hoop that we're jumping through? Judge Wilkinson, I agree with you completely. I would just add upon the points you made. This case has been pending for 12 years. It took a relatively slow path through the district court. I think this court should be reticent to remand for further proceedings in light of the factors you discussed just now as well as the factual findings of the district court. I think it's well within this court's discretion and ability to look at those factual findings, which have not been contested, or shown to be clearly erroneous, and rule that under the would have standard, the hypothetical prudent fiduciary would have removed these funds. After all, the district court found, as a fact, and it's not been contested on appeal, two things about the Nabisco Fund. Number one, they were exceedingly high risk. The district court said not only were they individual stocks, which the police says are very high risk, the Seventh Circuit has said are very high risk, but the tobacco chain was a very real possibility the market was imposing on NGH that it could go bankrupt because of tobacco liability. That was depressing. So the district court found that the stock was very high risk. And second, it found that there was no reason to expect above market recurrence. Another factor here, was it the econ takeover that sent the price sky high? That's right, Your Honor. Did the trustees in this instance have any inkling of the econ takeover? No. And should they have been expected to have some view of the econ takeover? Well, and the district court made factual findings. What did the district court say? Because was that the factor that sent the price up? Yes, I think that's undisputed. What were the factual findings with respect to the econ takeover? That not only did the fiduciaries here not anticipate it, could not have anticipated it, but that nobody anticipated it. There's not a single analyst report that anticipated it, a single newspaper article, nothing anticipated. It could not have been anticipated. So in other words, if they had investigated extensively, now, you know, we were thinking, well, could there be liability in the case where there was a procedural default? Well, maybe so, maybe not. But if you had a different case of whether further investigation would have uncovered evidence of the econ takeover, would that have been a different case? If they met more extensively or investigated more extensively and then they could have found that, oh, wait a minute, there's somebody ready with a takeover bid that's going to send the price of this in a positive direction, would there be liability in those circumstances? That would be a different case with possibly a different outcome like Judge Motz was looking for hypotheticals. But in fact, there was an analyst report, I think it was from Solomon Smith Barney, issued a week before ICON made his tender offer, and it didn't even mention ICON. So it's uncontroverted that that could not have been foreseen. They could have spent a million dollars hiring experts and economists and financial advisors. They never would have discovered that ICON was planning this. That's the report found. My point is that I think this is a more fact-specific case than maybe either of the parties suggested. I mean, we're talking about having some global adoption of this standard or this standard, but I think that a lot of it bottoms out on the fact of the presence of a single stock fund and the high-risk character of the Nabisco Fund in particular, the fact that ICON takeover could not have been discovered. It doesn't, you know, every case doesn't need to be the broadest case in the world. I agree with you, Your Honor. But I think there's a, you have to ask, where does the danger lie? And there's been some suggestion that, well, if we hold, if we absolve the trustees in this instance, we're establishing a broad rule that no matter what you do, no matter how arbitrary your actions are, there can never be liability if there's an objective decision at the end of the road. It doesn't need to be written that broadly, but if you take the facts here and the reasonableness of the decision here in light of widely accepted investment criteria and hold that monetary liability is possible, that is a broad ruling. That is a broad ruling because if it can happen under these facts, it can happen anywhere. But if we hold the trustees monetarily protected or protected in this instance, we're not necessarily establishing a broad ruling that applies with a different set of facts. I think that's right. And Plasterer's specifically addresses this question. And it says if there's no causation, we don't need to assess monetary liability. Because in most instances, Plasterer says on page 218, in most instances, a procedural breach will actually cause monetary loss and therefore monetary liability, and that adequately deters imprudent trustees. I think that, what you just said to us, directly contradicts your whole position. If in most instances, a procedural breach is going to result in monetary damages, we sure have procedural breaches here. So if we follow the most instances rule, it would result in monetary damages. Well, most is not all, Your Honor. But you're arguing, assertively saying that it supports your position. And it doesn't. It supports just the contrary position. Respectfully, I disagree, Judge Motz, because I think most means not all. The supposition, do you have a fiduciary breach? Not clear in Plasterer's, but clear as can be here. No, no. So you do have a fiduciary breach. So in most instances where you have a fiduciary breach, you have monetary damages. That's what you just said. Plasterer has found a fiduciary breach, a procedural breach, just like in our case. And then it remanded for the causation inquiry. And the objection to that was the same one that Judge Wilkinson was sort of putting to the side. The objection in Plasterer's was, well, you're letting people off scot-free. If you say to the fiduciaries, this is objectively prudent. But you said most instances you would have. Under your rule, most instances you won't. I disagree with that. In this case, because there's single stock funds that are highly risky and are per se imprudent, yes, taking them out is almost always going to be prudent. It's almost always not going to cause... Even if it's contrary to the plaintiff. Well, but again, the party stipulated a trial that they wouldn't make that argument. Whether you're complying with the plan is also evidence of your prudence. You look at the Rima cases about that, and they didn't make any stipulation about that. Well, they did. They argued... They weren't arguing under that specific provision of a risk. Oh, I... But they were using... All right, well, let's hear from the other side. Your Honor, I've been up here a very long time. Let me just... Is it possible... Well, we gave the other side lots of extra time. If you look at the stipulation that the parties entered, and that is... I apologize. That is from pages 852 to 859 of the joint appendix. The plaintiff specifically stipulated, after trial, when they tried to amend their complaint, they would not argue there was any higher burden on the defendants as a result of the invalidity of the November amendment, because we made exactly the point you're making, which is they're going to... We said, Judge Chili, they're going to argue we violated the plan. And if you're going to let them do that, our experts need to say different things, or additional things. And as a result, the parties... We took a break in the proceedings. The parties negotiated a stipulation in which, as you'll see in those transcript pages, plaintiffs very clearly said that the only thing they would get and that they wanted from an invalidity of the November amendment was that the Nabisco fund... Their argument that the fiduciaries could have kept the Nabisco funds in the plan as frozen funds. Let me ask you one other question. Notwithstanding the district court's use of the words could use, do you think it's possible to read the district court's opinion, taken as a whole, that he made a finding of prudence in accordance with 29 U.S.C.A. 1104 A1B? Yes. I think it's... And why do you say that? The could-would discussion, I think, is sort of a sideshow. Look, we take... We don't take... We try not to leap on one infelicitous phrase with respect to district courts, but I'm asking you whether the court's opinion, taken as a whole, can be read to make a finding on the ultimate question of compliance with 1104 A1B. I think the answer is yes, because the district court did a three-step analysis. His first step is, is it could or would? I decide it's could. That's what there's been a lot of argument. The second step is, if removing the Nabisco funds was objectively prudent, then a hypothetical prudent fiduciary could have done it. And then his third step was a factual analysis and factual findings to determine, yes, it was objectively prudent. So he made the finding in the very last section of his opinion that removing the two funds was objectively prudent under 1104. So I think that... If I understand your question, Judge Wilkinson, I think that's exactly right. Thank you, sir. Thank you. Ms. Werthmann, we'd be pleased to hear from you in rebuttal. Thank you, Your Honors. Yes, there were a number of points made, so I have a number of points I'd like to address, beginning with the question of the district court and how it comes out different on remand. This case has been going on for 12 years. We would certainly like to see this case resolved. We believe there's factual evidence in the record that if this court wanted to, it could find that a prudent fiduciary would not have made that decision. But certainly it would come out different on remand. I would point the court to page 38 of the district court's opinion in the joint appendix as compared to page 76. That's where the court is discussing timing. The court did not make a finding that the timing was objectively prudent. Moreover, and more globally important, the court, by virtue of its using the somebody, somewhere standard, that it's possible that some fiduciary could have made the same decision, meant that it ignored a lot of the evidence that it had found was important in deciding what would a prudent fiduciary have done in looking at the breach. Those same considerations come in at the coordination stage. What do you think a prudent fiduciary would do? Hold on, have held on to the fund? Yes, I do think a prudent fiduciary would have held on to the fund in all the facts and circumstances of the case. Okay, under all, do you think it should have held on to the Nabisco fund? Absolutely. All right. There's two funds, the NGH fund and the NA fund. The participants had made decisions about how to invest their options among a portfolio. These are 401K savings. But why should they have held on to the funds? Is it because there were a menu of options within the total portfolio? That's, I think, an extraordinarily relevant consideration. What about the Seventh Circuit decision that say even if it's one of a number of options, it's still a highly risky thing to have a single stock fund? And that risk was already in the plan. It's not, I think, my colleague for RGR concedes that at points there's important to have a risk option, an option that does have some risk in it in a plan because you don't want necessarily to have all your investments in the lowest, most conservative investment option. So you think that the decision that the trustees made here or the plan managers made here was objectively imprudent? Yes, I do think that. Okay, so you just disagree. Basically, it comes down to the fact that you just disagree with the district court's finding on objective prudence, huh? We do disagree with that finding. It comes down, and what we've argued to this court, is that the district court didn't make a correction. But is the district court clearly erroneous to get a five-week trial? Would you say it was clearly erroneous when he said that they made an objectively prudent decision? That's not a factual finding, Your Honor. That's a mixed question of law and fact. And as a mixed question of law, the question is what was the standard that the district court used in determining whether or not it was objectively prudent. And the district court used the wrong standard. Let me tell you, because I interrupted you previously, and I'm sorry. Tell me why you think it was objectively prudent, imprudent for them to have held the fund. Yes. The most important consideration, as Dr. Biller testified, was that of minimizing the risk of large losses to the participants by forcing the sale at a low point in their value. Now, the stock was at a low point. It was not in imminent danger of bankruptcy. There was no allegations that that was the case. While there was some litigation risk, the argument was, in fact, and the district court found, that the stock price incorporated the value, the risk that had been anticipated. And so it was what it was. It was falling between the RJR and Nabisco split and the time of the liquidation the price of the stock had been falling. Largely, it had been falling. Not every single day had it been falling. The fundamentals of Nabisco were strong. The analyst ratings were positive. Over time, the sell ratings, which had existed immediately after the spinoff, were eliminated. The district court found that those were considerations that could have lent support to keeping the funds in hand. Did your answer to me incorporate a great deal of market hindsight? I don't think that... We're looking across the wall into the future that the trustees didn't have. No, Your Honor. Hindsight is not appropriate in an ERISA case. The question is, what should the fiduciaries have known from doing a thorough investigation, which the district court found, correctly, they absolutely did not do. They did not look at the portfolios of the participants to see what their other holdings were. They did not look at the stated intent of the plan to provide for participants long-term savings. They did not look at the characteristics of NGH or NA to determine whether or not it made sense to sell and at what time it might make sense to sell. You really don't agree, then, with the Scalia concurrence at all, which says if they got there by blind luck and they made what a finder of fact found was an objectively prudent decision, that there wouldn't be loss causation. What you stated was quite contrary to the position that Justice Scalia stated and that many circuits have cited, if not adopted. Respectfully, Your Honor, I disagree. The Fink concurrence, which has been adopted by some cases, in the context of the hypothetical prudence fiduciary test, says that the question is, everything that a trustee should have known and taken into account, and that requires looking at all the facts and circumstances, it involves requiring a decision that a hypothetical prudence fiduciary would have made the same decision, not just would have, but for this plan, under these circumstances, at this time as well. And I believe that it will come out different. But let's suppose that plaintiffs do bear the burden of causation, of proof on the question of causation, that causation, just like in an anti-discrimination case, causation is an element of a plaintiff's cause of action. How can the district court's finding on the matter of causation be clearly in error when it finds that this was an objectively prudent decision, given the various facts and circumstances? A couple of points in response to that. One is that it's our burden to show a prima facie case on causation under the test as adopted by the Fifth and the Eighth Circuit. If it comes out differently and it's our burden to show that, it's nonetheless the same question, which is, would a hypothetical prudence fiduciary nonetheless have made the same decision anyway? And we would meet that burden under the detailed facts and circumstances if all of those facts and circumstances are considered, including the timing. Thank you. Can I just ask one last question, because I'm a little confused about it? Is it your concession that the district court's conclusion that this was objectively reasonable is a finding of fact, a conclusion of law? What is that? No, I'm sorry. I view that as... No, no, I'm misunderstanding. You didn't get it wrong. Okay. Yes, I want to be clear that the question of causation is always a mixed question of law and fact, and in this case it's a question of law because it's the application of the wrong standard. So you would say that the ultimate finding that the trustee acted objectively reasonable was based on an incorrect standard. Yes, exactly. Like if you dismissed for summary judgment and you stated the correct standard and then in fact you found a bunch of facts, it couldn't hold. Or if you said the standard was which side prevailed, which is most likely on a reasonable doubt, and the standard wasn't, so you make that claim. Okay. So that's where you think that the objectively reasonable ultimate conclusion rests on an inappropriate standard. Exactly, a misinterpretation of Section 409 in ERISA. Okay, thank you very much. Thank you very much. We'll come down and re-counsel and take a brief recess.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Albert Diaz